828 F.2d 18
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Gladys M. WERTS; George E. Werts; Housing Opportunities Made
Equal, Plaintiffs-Appellees,
v.
Nelson WHITAKER, Tillie M. Whitaker, Defendants-Appellants.
 No. 86-1249
 United States Court of Appeals, Fourth Circuit.
 Argued July 6, 1987.
Decided August 20, 1987.
 
 William Wallace Davenport (Robert P. Geary, on brief), for appellants.
 James P. Murphy (Paul E. Gutermann; Allen W. Levy, Squire, Sanders & Dempsey, Kerry Alan Scanlon, on brief, for Appellees.
 Before DONALD RUSSELL, WIDENER and K. K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 Nelson and Tillie Whitaker appeal from an adverse judgment in this case brought under the Fair Housing Act, 42 U.S.C. Sec. 3601 et seq. and under 42 U.S.C. Secs. 1981 and 1982. The district court, in a bench trial, found that the Whitakers had engaged in purposeful and invidious discrimination in refusing to sell their property to plaintiffs because they are black. We affirm.
 
 
 2
 In July 1985, the Whitakers listed certain property they owned for sale. The property was listed with St. John Realty and the asking price was $86,000. The Whitakers' agent was Bonnie Ware who had known them for some 15 to 16 years and helped them in listing and displaying the property.
 
 
 3
 On September 1, 1985, plaintiffs George and Gladys Werts accompanied their real estate agent, Linda Randjelovic, to inspect the Whitakers' house. While the Werts were truly interested in the house, they thought the asking price of $86,000 was too high in light of their belief that the house was in need of repairs and redecorating. Accordingly, the Werts, with the assistance of Mrs. Randjelovic prepared a contract offering to purchase the house for $70,000. Although the Werts were willing to pay more than $70,000 for the home, they thought that this was a reasonable initial offer and that the give and take of negotiations would produce a mutually satisfactory compromise. Mrs. Randjelovic agreed and promptly contacted Mrs. Ware, the listing agent, to communicate the offer. Significantly, Mrs. Randjelovic did not indicate to Mrs. Ware the amount offered but merely agreed to deliver the contract to Mr. Ware the next morning.
 
 
 4
 Early on September 2, Mrs. Ware telephoned the Whitakers to inform them of the offer. Mrs. Ware spoke with Mrs. Whitaker who asked if the contract was with the people Mrs. Randjelovic had shown the house the day before. Mrs. Ware stated that she believed it was, since Mrs. Randjelovic had phoned the night before to tell Mrs. Ware of the contract. Once learning this, Mrs. Whitaker replied that there would be no need for Ware to deliver the contract, because, if she sold to the Werts,[1] the value of the house she currently lived in (which was adjacent to the one for sale) would depreciate. Moreover, Mrs. Whitaker related that at least one of her neighbors had stated that if the Werts bought the home, she would move. Although Mrs. Whitaker stated to Mrs. Ware that there was no need to bring her the contract, neither Mrs. Ware nor Mrs. Whitaker knew at that time the amount the Werts were offering.
 
 
 5
 Later that morning when Mrs. Randjelovic did bring the contract to Mrs. Ware, Mrs. Ware requested that Mrs. Randelovic accompany her to the Whitakers to present the contract. Mrs. Randelovic complied and followed Mrs. Ware to the Whitaker house where the contract was given to Mrs. Whitaker. Mrs. Whitaker told the two agents that she would speak with her husband and contact them later that day.
 
 
 6
 Later that day, Mrs. Whitaker called Mrs. Ware at her office and Mrs. Ware returned to the Whitaker house. When Mrs. Ware arrived at the Whitakers, Mr. Whitaker met her at her car and handed her the contract on which he had written 'rejected.' Mrs. Ware than went immediately to the house for sale and removed her sign and key lock box. Mrs. Ware later wrote a letter to the Whitakers in which she outlined her position that as a realtor and person she felt that everyone must be treated equally. She also called Mrs. Randjelovic and explained that the contract had been rejected and supplied her with a copy of the letter to the Whitakers. Mrs. Randelovic then communicated the news to the Werts, saying that the contract had been rejected due to their color.
 
 
 7
 The district court found that the Whitakers had refused to sell their house to the Werts because of the latter's race and granted appropriate relief. In so doing, the court rejected the Whitakers' defense that the basis for their rejection of the Werts' offer was because it was too low. The lower court also did not find persuasive the Whitakers' evidence that they socialized with black people, had a black person living in their home, and attended church with blacks.
 
 
 8
 Reviewing the district court's findings under the appropriate standard, Fed. R. Civ. P. 52(a), and while the evidence might have supported a judgment for the defendants, we cannot say that it was clearly erroneous in deciding that the reason that the Whitakers rejected the Werts' offer and failed to negotiate with the Werts' was due to the Werts' race.
 
 
 9
 Accordingly, the judgment of the district court is
 
 AFFIRMED[2]
 
 
 [1]
 The record shows that while Mrs. Whitaker had not formally met the Werts at this time, she knew that they were black
 
 
 [2]
 We also affirm that portion of the lower court's decision that granted plaintiff Housing Opportunity Made Equal $1,020.46 in damages. We think that the district court's award was within its discretion